# IN THE COURT OF APPEALS OF IOWA

No. 16-1562
Filed August 2, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONAREASE LAWLESS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark J. Smith,
Judge.

Donarease Lawless appeals the judgment entered and sentence imposed
following his convictions of possession of a firearm by a felon and assault with a
dangerous weapon.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant
Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney
General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Donarease Lawless appeals the judgment entered and sentence imposed following his convictions of possession of a firearm by a felon and assault with a dangerous weapon. His claim the trial court erred in admitting certain evidence is not properly before us on appeal. Furthermore, Lawless has failed to show a probability the outcome of trial would have been different had counsel objected to the admission of other-bad-acts evidence. Accordingly, we affirm.

**I. Background Facts and Proceedings.**

On April 20, 2016, Lawless went to the home of Linda Bailey in an attempt to locate her son, who had reportedly hit Lawless's sister. Bailey ordered Lawless to leave the property after he threatened to hit one of her daughters. Lawless and three companions then left in a black Chevy Impala but returned a short time later and drove past the house twice at a slow speed. Bailey saw Lawless in the car, pointing what she believed to be a weapon at the house, which placed her in fear for her safety. Another of Bailey's daughters saw Lawless was aiming a black handgun toward the house as the vehicle passed by. The Impala then parked down the street from the house.

The police were dispatched to Bailey's house, but the Impala drove off after the first officers arrived. Officer Craig Burkle located the Impala shortly after and tried to initiate a traffic stop. However, the vehicle drove off at a high rate of speed before its occupants abandoned it and fled on foot. Officer Burkle located Lawless and took him into custody a short time later.

The State charged Lawless with possession of a firearm by a felon, assault with a dangerous weapon, interference with official acts, and assault on a

police officer. Lawless pled guilty to interference with official acts and assault on a police officer. The charges of possession of a firearm by a felon and assault with a dangerous weapon proceeded to a jury trial.

Before the start of trial, Lawless filed a motion in limine to exclude evidence concerning Lawless's detention and subsequent arrest. Specifically, the motion sought to exclude video and audio recordings that showed him "being combative with police, swearing, and failing to follow officer instructions" on the basis that the evidence was highly prejudicial and not relevant to the crimes he was charged with. The State argued the evidence of Lawless's conduct following his detention and arrest was relevant "to show his state of mind, his behavior at that point, which . . . [occurred] just near minutes after the alleged assault." The court overruled the motion.

At trial, Officer Burkle testified about how Lawless behaved when he was taken into custody:

> He was pretty calm at first. And then when we got him to the back of the squad car, he just absolutely freaked out and just started screaming at us, started nailing his head on the back partition, and just started screaming, "Why the fuck did you pull me over? Why the fuck did you pull me over?" And he just kept repeating saying that.
> Q. Would you describe his physical behavior as aggressive at that point? A. Very aggressive, yes.
> Q. Did you have any concerns for your safety then? A. Yeah. We were . . . all pretty worried for his safety and our safety because he was hurting himself by smacking his head on the back window.
> Q. Were you able to keep him from hurting himself at that point? A. At that time my sergeant, he advised us to get him out of the back of the car because after he was freaking out, he was acting like he was unconscious. So we got him out. We confirmed that he was still breathing. We confirmed that he still had a pulse. We started fire and medic to our location. And then once we got him out onto the ground, we have this thing what's called a Wrap,

and basically it's a suit that you wrap around the person so that they can't kick ya, they can't punch you, and there's a mask that they can't spit on you too, because he was spitting as well.

And when we got him on the ground, he started fighting us again. He was no longer playing the unconscious role that he initially was. And we started wrapping him up so he was no longer a danger to himself, nor was he a danger to us.

Q. Do you have video cameras in your patrol car? A. Yes. We have video from the front that goes out the front windshield, and then we have video in our back seat.

The State then moved to admit the videotape from the patrol car's camera into evidence, and after defense counsel stated Lawless had "[n]o objection," the court admitted it. While the videotape played for the jury, Officer Burkle testified about what it showed:

Q. Is that the defendant, Mr. Lawless, that's placed in the vehicle now? A. Yes.

. . . .

Q. Now, you can hear a thud at that point. What's that noise coming from? A. It's the . . . the window on the door, and it's the partition that's in-between, the plexiglass that's in-between myself and him.

Q. Is that a fairly hard surface? A. Yeah. It's . . . plastic, but . . . he ain't going to be able to get through it.

. . . .

Q. We just saw a red item come into the screen. Can you just describe what that is? A. That's the mask so you can put it around his head so he can't attempt to injure himself any further, or reduce the amount that he can injure himself, because he keeps hitting his head on the glass. We want to put that around his face so he doesn't injure his forehead anymore.

Q. Was that a concern at that point, that he might injury himself? A. Yeah. Yep.

Q. Officer Burkle, did you come into contact with Mr. Reed again at any point? A. I did.

Q. And where did that take place? A. Some other officers that were in the area located him, and he was put in the back of the squad car. And you can hear me on video, because I have my recorder on me, which is still going to this recording. You can hear me going over to that squad car. "Can you tell me what's wrong with your buddy?" I thought maybe he was hallucinating, taking some sort of drugs, or something like that that was making him act the way he was. And I was asking him, I'm like, "Can you tell me if

your buddy is taking any drugs or anything, why he would be act being like this?" And you can hear me on the video just ask him, but he just denied knowing him.

Q. Okay. Did you have any reason to be concerned that Mr. Lawless might be on drugs? A. Well, it's not normal behavior the way he was acting. There was a concern. And we had fire and medic come, and I wanted to be able to address them and let them know if there was something that they should be aware of.

During the jury's deliberation, the jurors requested to view the videotape of Lawless in Officer Burkell's vehicle, which the court allowed. At the close of deliberations, the jury returned a verdict finding Lawless guilty of both possession of firearm by a felon and assault with a dangerous weapon.

**II. Relevancy and Prejudice.**

Lawless contends the trial court erred in admitting the videotape of his conduct following his arrest into evidence. He claims it was not relevant and its probative value was outweighed by the danger of unfair prejudice. *See* Iowa Rs. Evid. 5.402, 403.

The State argues Lawless failed to preserve error on this issue because, although Lawless raised this claim in his motion in limine, he failed to object to the videotape's admission at trial.

> Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial. However, "where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling."

*State v. Tangie*, 616 N.W.2d 564, 568-69 (Iowa 2000) (citations omitted).

In ruling on the motion, the court stated that "so far" it had not heard a reason to limit the evidence, which the court found was relevant to Lawless's

state of mind. This ruling does not signal the necessary finality to make it binding. *See State v. Daly*, 623 N.W.2d 799, 800 (Iowa 2001) (holding ruling on motion in limine was beyond question as the court's final ruling where defense counsel asked if the ruling was the final order of the court and the court responded affirmatively). Lawless was therefore required to raise an objection to its admission at trial to preserve error. However, when the State offered the videotape into evidence at trial, Lawless not only failed to object, his counsel affirmatively stated he had "[n]o objection." In doing so, Lawless has waived error. *See State v. Brown*, 656 N.W.2d 355, 360-61 (Iowa 2003) (noting that any objection raised before trial is waived when a defendant, through counsel, affirmatively consents to the admission of that evidence).

**III. Other Bad Acts.**

Lawless also challenges the admission of the videotape evidence, arguing it was inadmissible as evidence of other bad acts. Our rules of evidence prohibit the admission of prior-bad-acts evidence for the purpose of proving "a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). Evidence of prior bad acts may be admissible for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

Lawless concedes he never objected to the videotape's admission as evidence of other bad acts and has therefore failed to preserve this issue for our review. He instead argues his trial counsel was ineffective in failing to challenge admission of the videotape as evidence of other bad acts. *See State v.*

*Ondayog,* 722 N.W.2d 778, 784 (Iowa 2006) ("Ineffective-assistance-of-counsel claims are not bound by traditional error-preservation rules.").

To prove a claim of ineffective assistance of counsel, Lawless must show by a preponderance of the evidence that his trial counsel failed to perform an essential duty and that failure resulted in prejudice. *See id.* An ineffective-assistance claim fails if he cannot prove either element of the test. *See id.* Because we presume counsel performed competently, Lawless must show his trial counsel's representation fell below an objective standard of reasonableness. *See id.* at 785. Lawless establishes prejudice if counsel's substandard performance undermines our confidence in the jury's verdict. *See id.* at 784.

The State notes Lawless's detention occurred a short time after he was reported driving past Bailey's house in a threatening manner. Therefore, it claims the evidence of his aggressive conduct upon his detention is relevant to show he was acting aggressively while at Bailey's house. The State agues the evidence was not introduced to show Lawless was acting in conformity with his bad behavior but instead was properly introduced to show his motive and intent while driving past Bailey's house.

We need not comment on the merits of the State's argument, for even assuming counsel had a duty to object to the evidence under rule 5.404(b), Lawless cannot show a probability of a different outcome if counsel had lodged an objection. Even if counsel had objected and the court excluded the videotape from evidence, overwhelming evidence shows Lawless possessed a firearm and used it in a way to place Bailey and her family in fear of immediate physical contact while having the apparent ability to act. Because overwhelming evidence

supports a finding of guilt even without the videotape, counsel's failure to object to the evidence did not prejudice Lawless. *See State v. Casady*, 597 N.W.2d 801, 808 (Iowa 1999) (concluding the defendant failed to prove he was prejudiced by admission of evidence of other crimes because, even without it, the evidence of the defendant's guilt was "very substantial").

We affirm Lawless's convictions for possession of a firearm by a felon and assault with a dangerous weapon.

**AFFIRMED.**